UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETREDEC GLOBAL SHIPPING PTE LTD, <br><br> Plaintiff, <br><br> -against- <br><br> VITOL, INC., <br><br> Defendant. | 24-cv-_____ <br><br> **COMPLAINT** |

Plaintiff, Petredec Global Shipping Pte Ltd. ("Petredec" or "Plaintiff"), by its attorneys Freehill, Hogan & Mahar LLP, as and for its Complaint against Vitol, Inc. ("Vitol"), alleges as follows:

## GENERAL NATURE OF THE CLAIM

1. This is an action involving, *inter alia*, a claim for damages relating to a 2024 transaction involving approximately 1750 MT of low sulfur marine fuel oil supplied by Vitol for use on the ocean-going vessel M/T *Navigare Generosa* (the "Vessel").

## PARTIES

2. Upon information and belief, the defendant, Vitol, Inc. ("Vitol"), is a corporation organized and existing under the laws of the State of Delaware.

3. Petredec is a foreign entity organized and existing under the laws of a foreign nation, with its principal place of business in Singapore, which was and is engaged in the business of operating vessels for the carriage of goods by sea.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1333, as this action involves admiralty and maritime claims within the meaning of Rule 9(h) of

609904.1

the Federal Rules of Civil Procedure, and insofar as this action involves claims arising out of breach of a maritime contract by Vitol.

5. Vitol is subject to personal jurisdiction in this District pursuant to the terms of the marine fuel supply contract giving rise to the claims asserted in this action, which provides that "both Parties submit to the exclusive jurisdiction of the courts sitting in the city of New York, State of New York of the United States of America in connection with any dispute or claim whatsoever arising out of or in connection with [the contract]."

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because Vitol is subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

7. At all material times herein, Petredec was the time charterer of the Vessel. In its capacity as time charterer, Petredec was responsible for procuring marine fuel (i.e. bunkers) for the Vessel.

8. On January 10, 2024, Petredec, as "Buyer," and Vitol, as "Seller," entered into a "Bunker Stem Confirmation" via brokers Nautical Supply International DMCC ("NSI") for the purchase/sale of, *inter alia*, 1750 MT of VLSFO RMG 380 bunkers (the "Fuel") to be supplied to the Vessel during a call to Houston, Texas (the "Bunker Confirmation"). A copy of the Bunker Confirmation is attached as **Exhibit A**.

9. The Bunker Confirmation states that the contract incorporates the "Vitol GT&C'S Effective March 1st 2021" (the "Vitol Terms," and, collectively with the Bunker Confirmation, the "Bunker Contract"). A copy of the Vitol Terms is attached as **Exhibit B**.

609904.1

10. The Fuel was physically delivered to the Vessel at Houston by Vitol on January 11, 2024, as evidenced by a Marine Fuel Delivery Receipt (the "BDR"). A copy of the BDR is attached as **Exhibit C**.

11. Under the Bunker Contract, the Fuel was required to comply with the terms of ISO 8217:2010 and MARPOL 73/78 ANNEX VI REGULATION 14 AND 18. *See* **Ex. A**, the Bunker Confirmation.

12. The Vitol Terms further provide at Clause 7.2 that "[t]he Marine Fuels supplied hereunder shall in all respects comply with the edition of the ISO Standard stated in the Confirmation Note." **Ex. B**, the Vitol Terms at Cl. 7.2.

13. The Vessel attempted to burn the Fuel, but burning of the Fuel led to the accumulation of sludge in the Vessel's engines, which, according to the Vessel's Head Owners, in turn caused damage to the Vessel's fuel system.

14. Testing of the Fuel has revealed that the Fuel contains abnormal/impermissible levels of organic fatty acids and thus does not comply with the required ISO 8217:2010 quality specifications.

15. Accordingly, Vitol is in breach of the Bunker Contract by failing to supply Fuel which complied with the agreed contractual quality specifications.

16. Because the Fuel fails to comply with the quality specifications set forth in the Bunker Contract, the remainder of Fuel onboard cannot be burned by the Vessel, as burning the Fuel could result in to damage to the Vessel's engines, which could in turn cause the Vessel to lose propulsion. The loss of propulsion at sea would expose the Vessel to a significant risk of property damage, and would also greatly increase the risk of other issues such as an oil spill or other environmental damage.

17. As a result of Vitol's breach of the Bunker Contract, Petredec has suffered losses in an amount no less than $994,710.00, which figure represents the total amount paid by Petredec to Vitol for the Fuel.

18. Additionally, Petredec also faces significant claims from the Owners of the Vessel for costs incurred in de-bunkering (i.e. removing) the off-spec Fuel from the Vessel, the cost of replacement bunkers, and other associated items in an amount to be determined at trial.

## AS FOR THE FIRST CAUSE OF ACTION
## FOR BREACH OF MARITIME CONTRACT

19. Petredec repeats and re-alleges each and every allegation as set forth in paragraphs 1-18 of the Complaint with the same force and effect as if fully set forth herein.

20. Pursuant to the Bunker Contract, Vitol was required to provide fuel that complied with the contractually agreed ISO 8217:2010 specifications and was thus suitable for use of ocean-going vessels such as the Vessel.

21. However, the Fuel provided by Vitol was not suitable for use on ocean-going vessels as it contained abnormal levels of fatty acids that are impermissible for marine fuels and in violation of the agreed RMG 380 quality standard set by the ISO.

22. Petredec has complied with all obligations it possesses pursuant to the Bunker Contract.

23. As a direct and proximate result of Vitol's breach of the Bunker Contract, Petredec has suffered considerable damages in the form of the costs of the Fuel and other additional losses and expenses arising out of Vitol's failure to remove and/or replace the off-spec Fuel. Such damages currently total at least **$994,710.00**.

24. As a consequence of the aforesaid breach, Vitol is liable to Petredec for all damages and losses occasioned by the breach, including but not limited to replacement costs, removal costs, the cost of replacement fuel, surveyor fees, and lab testing in an amount currently totaling at least **$994,710.00**, with the exact amount to be determined at trial.

**AS FOR THE SECOND CAUSE OF ACTION
FOR BREACH OF WARRANTY**

25. Petredec repeats and re-alleges each and every allegation as set forth in paragraphs 1-18 of the Complaint with the same force and effect as if fully set forth herein.

26. Pursuant to the Bunker Contract, Vitol expressly warranted, among other things, that the Fuel would comply with the agreed RMG 380 quality specifications as set forth in ISO 8217:2010.

27. Vitol made the aforementioned express warranties to induce Petredec to purchase the Fuel for the Vessel.

28. Petredec relied on the affirmations and promises provided by Vitol in purchasing the Fuel.

29. Vitol breached its express warranties by tendering fuel oil which was non-conforming with respect to, *inter alia*, the warranties set forth in ISO 8217.

30. As a direct and proximate result of Vitol's breach of express warranties, Petredec has suffered considerable damages in the form of the costs of the Fuel and other additional losses and expenses arising out of Vitol's failure to remove and/or replace the off-spec Fuel. Such damages currently total at least **994,710.00**.

31. As a consequence of the aforesaid breach, Vitol is liable to Petredec for all damages and losses occasioned by the breach, including but not limited to replacement costs, removal costs,

609904.1

the cost of replacement fuel, surveyor fees, and lab testing in an amount currently totaling at least **$994,710.00**, with the exact amount to be determined at trial.

WHEREFORE, Plaintiff Petredec pray for a judgment against Defendant Vitol on the above causes of action in a total sum exceeding **$994,710.00**, as well as the costs and attorney fees to be incurred in respect to this action, plus interest, together with such other and further relief as this Court may deem just and proper in the premises.

Dated:  New York, New York
April 9, 2024

                            FREEHILL HOGAN & MAHAR LLP
                            *Attorneys for Petredec*

                                  /s/ Michael J. Dehart
By: _____
Michael J. Dehart, Esq.
80 Pine Street, 25th Floor
New York, NY 10005
Tel: 212-425-1900 | Fax: (212) 425-1901

609904.1